UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE EXECUTIVE CORPORATION,<br><br>　　Plaintiff,<br><br>v.<br><br>OISOON, LLC, and LI JIN XU,<br><br>　　Defendants. | Case No. 3:16-cv-00898<br><br>Judge Trauger<br>Magistrate Judge Newbern |

# MEMORANDUM AND ORDER

On May 18, 2106, Plaintiff The Executive Corporation (TEC) sued defendants Oisoon, LLC, and Li Jin Xu for appropriating images from its website and using those images to sell products similar (or perhaps identical) to those marketed by TEC. (Doc. No. 1.) TEC alleges two claims against these defendants: that they removed or altered copyright management information, in violation of 17 U.S.C. §1202(b), and that they engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). (*Id.* at PageID# 4–8.) Despite having been served with process (Doc. Nos. 6, 7), neither defendant has appeared to defend against these claims. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered default against Oisoon, LLC on July 15, 2016 (Doc. No. 10) and default against Li Jin Xu on August 29, 2016 (Doc. No. 15).

TEC moved for default judgment under Federal Rule of Civil Procedure 55(b) on October 20, 2016. (Doc. No. 18.) After determining that TEC does not request damages in a sum certain, the magistrate judge ordered TEC to submit additional proof to support its damages claim. (Doc. No. 21.) TEC submitted the affidavit of its president, Stewart Switzer (Doc. No. 22-

1), and its counsel, Thomas J. Boylan (Doc. No. 22-20), on July 2, 2017. TEC also filed additional evidence documenting the harms it alleges, including photographs comparing images from its website to those found on defendants' site. (Doc. No. 20.) Upon consideration of these filings, the court hereby WITHDRAWS the reference to the Magistrate Judge and GRANTS TEC's motion for default judgment.

I.      **Statement of Facts**

The following facts are taken from TEC's Verified Complaint (Doc. No. 1), Switzer's affidavit (Doc. No. 22-1), Boylan's affidavit (Doc. No. 22-20), and their supporting documents (Doc. No. 22-2–22-23).

TEC is a Tennessee corporation that "operates a promotional marketing company that designs, advertises and sells logo branded products via the internet." (Doc. No. 1, PageID# 1, 3, ¶ ¶ 1, 9.) TEC markets over 30,000 branded logo products through its website, www.theexecutiveadvertising.com. (Doc. No. 22-1, PageID# 141, ¶ 4.) "TEC's internet site . . . uses original source coding, text and photographs that have been created and developed by TEC and are the unregistered copyrights of [TEC]." (Doc. No. 1, PageID# 3, ¶ 9.)

Defendant Oisoon LLC is a Texas corporation that sells logo branded products through the website www.oisoon.com. (Doc. No. 1, PageID# 1, 3, ¶¶ 2, 10.) Defendant Li Jin Xu is a Texas resident and manager of Oisoon LLC. (*Id.* at PageID# 1, ¶ 3.) Oisoon LLC "regularly conducts and solicits business in [Tennessee] through its interactive website . . . [and] purposely avails itself of acting in Tennessee by selling goods and entering into contracts with residents of Tennessee." (*Id.* at PageID# 2, ¶ 5.) Upon information and belief, Defendant Xu "personally participated in constructing" Oisoon LLC's website and in the sale of its products. (*Id.* at ¶ 6.)

Oisoon LLC and Xu (collectively, Oisoon) conduct business in this judicial district, where many of the events underlying TEC's claims took place. (*Id.* at ¶ 8.)

In November and December 2015, TEC became aware of Oisoon's website, where TEC discovered "many of the exact same images as TEC's copyrighted images." (Doc. No. 1, PageID# 3, ¶ 11; Doc. No 22-1, PageID# 142, ¶ 7.) Oisoon "[was and is] using those images to sell products that are similar to those sold by TEC" on its website, but at lower prices than TEC. (Doc. No. 1, PageID# 3, ¶ 11.) TEC discovered Oisoon's activities when "customers began contacting [Switzer] about the disparity in price between the two sites. Many customers thought the two sites were related or simply wanted [Switzer] to match Oisoon's lower price." (Doc. No. 22-1, PageID# 142, ¶ 7.) TEC matched the price of the products listed on Oisoon's website in order to retain its customers' business. (Doc. No. 1, PageID# 4, ¶ 12.)

TEC identified images of 969 of its 2,999 products that Oisoon had copied directly from TEC's website to its own, including supporting text and descriptions. (Doc. No. 22-1, PageID# 142, ¶ 9.) To claim its proprietary images, TEC had "embedded some of its website photographs with copyright management information in the form of the trade name 'The Executive Advertising' as a watermark at the top or in the bottom right hand corner." (Doc. No. 22-1, PageID# 142, ¶ 5.) Included among the images found on the Oisoon site were four photographs from TEC's website with the identifying watermark removed. (Doc. No. 1, PageID# 3–5; Doc. No. 22-1, PageID# 142–43; Doc. Nos. 22-3–22-8.) Otherwise, all of the data and images reproduced on Oisoon website were exact duplicates of the images on TEC's website, "and some even linked to the TEC website because [Oisoon] copied and pasted without removing TEC's URL information." (Doc. No. 22-1, PageID# 143, ¶ 12.) The Oisoon website even contained ten

images taken from TEC's website and published with the TEC watermark included. (Doc. Nos. 22-10–22-19.)

On May 17, 2016, TEC sent a takedown notice to Oisoon's internet service provider as contemplated in the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(c), and a cease-and-desist letter to Oisoon. (Doc. No. 1, PageID# 4, ¶13; Doc. No. 1-3; Doc. No. 22-1, PageID# 143, ¶ 13; Doc. No. 1-4.) In response, Oisoon "removed most, but not all" of TEC's images from their website "by August-September 2016." (Doc. No. 22-1, PageID# 143, ¶ 13.)

## II. Discussion

### A. Legal Standard

After a party's default has been entered under Rule 55(a), the court may enter default judgment. In so doing, the court treats all well-pleaded allegations of the complaint as true, except allegations regarding the amount of damages, and must determine whether those facts state a claim. *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007); *Zinganything, LLC v. Import Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016). Otherwise, the entry of default judgment is a matter of the court's discretion, guided by factors including: (1) prejudice to the plaintiff; (2) the merits of the plaintiff's claim; (3) the complaint's sufficiency; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Mucerino v. Newman*, No. 3:14-cv-00028, 2017 WL 387202, at *2 (M.D. Tenn. Jan. 26, 2017) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *Marshall v. Bowles*, 92 F. App'x 283, 285 (6th Cir. 2004)).

The court may conduct a hearing or make a referral to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other

matter. Fed. R. Civ. P. 55(b)(2)(A)–(D). The court referred this matter to the magistrate judge (Doc. No. 19), who ordered TEC to submit additional evidence in support of its motion (Doc. No. 21). In light of the evidence TEC submitted in response (Doc. No. 22), the court finds that no evidentiary hearing is required.

**B.     Jurisdiction**

The court must determine that it has jurisdiction over an action and its parties to render a valid judgment, even when a defendant is in default. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995). "Once default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the Complaint, including jurisdictional averments." *Ford Motor Corp. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006). The verified complaint alleges this court's jurisdiction over TEC's claims because they arise under federal copyright law and the Lanham Act. 28 U.S.C. §§ 1331, 1338(a); 15 U.S.C. § 1121. Federal question jurisdiction over the action is therefore established.

Regarding the court's jurisdiction over Oisoon LLC and Xu, "[w]here a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[s] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Because Tennessee's long-arm statute has been interpreted to reach the highest limit of federal due process, "the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003). Personal jurisdiction therefore exists if: (1) the defendant purposefully avails

himself of the privilege of acting in the forum state or causing a consequence in the forum state, (2) the cause of action arises from the defendant's activities there, and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Here, TEC asserts specific personal jurisdiction over Oisoon LLC based upon its allegation that Oisoon LLC "regularly conducts and solicits business in this jurisdiction through its interactive website" and "purposely avails itself of acting in Tennessee by selling goods and entering into contracts with residents of Tennessee." (Doc. No. 1, PageID# 2, ¶ 5.) "The operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Bird*, 289 F.3d at 874 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002)). The court "distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site." *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005). A website through which a company sells its goods, provides information about its products, and communicates with its customers is sufficiently interactive to establish its operators' purposeful availment of a forum state. *Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 814 (E.D. Mich 2000). TEC's allegations are therefore sufficient to establish that Oisoon LLC purposefully availed itself of Tennessee as a forum state through use of its website, that TEC's claims arise out of Oisoon LLC's actions in operating that website, and that the consequences of those actions have a substantial connection with Tennessee and its residents. *Mohasco*, 401 F.2d at 381.

With regard to Xu, "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974). Rather, personal jurisdiction must be established based upon corporate officers' individual acts on behalf of the corporation. *See Balance Dynamics Corp. v. Schmitt. Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000). TEC alleges that Xu "personally participated in constructing Defendant Oisoon LLC's infringing website and the sale of the infringing articles at issue in this litigation." (Doc. No. 1, PageID# 2, ¶ 6.) TEC's allegations of Xu's personal participation in creating the website and in Oisoon LLC's sales are sufficient statements of Xu's individual actions within Tennessee to invoke this court's jurisdiction.

C.  **The Digital Millenium Copyright Act Claim**

Section 1202(b)(1) of the DMCA prohibits, *inter alia*, "intentionally remov[ing] or alter[ing] any copyright management information" with the knowledge, or with "reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b)(1). Copyright management information includes "[t]he name of, and other identifying information about, the copyright owner of the work[.]" *Id.* §1202(c)(3). Here, the watermarked text "The Executive Advertising" that appeared on TEC's images constitutes copyright management information.

While copyright owners must ordinarily register their copyrights before filing a claim of infringement under the Copyright Act, registration is not required to pursue a DMCA claim. *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 531 (S.D.N.Y. 2004) (citing 3 M. & D. Nimmer, NIMMER ON COPYRIGHT, § 12A.18[B] (2003)); *Medical Broadcasting Co. v. Flaiz,* 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003) (stating that, "[w]hile a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for

copyright infringement, claims under the DMCA, however, are simply not copyright infringement claims and are separate and distinct from the latter"). TEC does not claim infringement of its unregistered copyright. It claims the intentional and unauthorized reproduction by Oisoon of four of TEC's images after removing its copyright management information under 17 U.S.C. § 1202(b). (Doc. No. 1, PageID# 4–5.)

"A section 1202(b)(1) violation occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws." *Gordon v. Nextel Commc'ns. & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003). The allegations of TEC's verified complaint, the Switzer affidavit (Doc. No. 22-1, PageID# 141–44), and the photographic proof of the information's removal from the four images as reproduced on Oisoon's website (Doc. Nos. 22-3–22-9, PageID# 173–85) establish these elements. The complaint alleged, and the court presumes true, that "[Oisoon], without permission or license from TEC, copied TEC's photographs from its web site [sic], intentionally removed the copyright management information contained on those photographs, and published the altered photographs on its own web site." (Doc. No. 1, PageID# 5, ¶ 19.) In addition, Oisoon was plainly using TEC's images without permission, as TEC did not discover Oisoon's activities until "customers began contacting [Switzer] about the disparity in price between the two sites." (Doc. No. 22-1, PageID# 142, ¶ 7.) The complaint alleged, and Switzer stated in his affidavit, that four photographs on the Oisoon site were identical to TEC's product photographs, except that the identifying watermark text "The Executive Advertising" had been removed. (Doc. No. 1, PageID# 3–5; Doc. No. 22-1, PageID# 142–43, ¶¶ 10, 12.) Examination of the submitted screenshots of both companies'

websites containing those photographs confirms Oisoon's removal of TEC's identifying information. (*Cf.* Doc. No. 22-3 *with* Doc. No. 22-4; Doc. No. 22-5 *with* 22-6; Doc. No. 22-7 *with* 22-8; Doc. No. 22-9.) Oisoon is liable to TEC under § 1202(b)(1).

"The mere determination of defendant's liability does not, however, automatically entitle plaintiff to default judgment." *Malibu Media, LLC v. Doe*, No. 2:14-cv-1136, 2015 WL 2365507, at *1 (S.D. Ohio May 15, 2015). That decision is within the court's discretion. *Id.*; *see Mucerino*, 2017 WL 387202, at *2. In this case, the court finds that entry of judgment by default is warranted by the prejudice TEC has experienced from Oisoon's appropriation of its images for Oisoon's commercial use; the strong documentary evidence submitted demonstrating Oisoon's infringing acts; the negligible possibility of a material factual dispute; and the lack of evidence that the default was due to excusable neglect (particularly in light of the fact that Oisoon responded to TEC's demands by "remov[ing] most, but not all" of TEC's images from their website "by August-September 2016" (Doc. No. 22-1, PageID# 143, ¶ 13)).

The DMCA allows an election of damages so that "a person committing a violation of section 1201 or 1202 is liable for either (A) the actual damages and any additional profits of the violator . . . or (B) statutory damages." 17 U.S.C. § 1203(c)(1). TEC has elected to pursue statutory damages. (Doc. No. 18-1, PageID# 93–94; Doc. No. 22-1, PageID# 145, ¶ 23.) The DMCA's statutory damages provision states that, "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." *Id.* § 1203(c)(3)(B). While TEC originally sought the maximum award under § 1203(c)(3)(B) for each of the four violations in light of Oisoon's default (Doc. No. 18-1, PageID# 94), it now seeks the minimum statutory award of $2,500.00 for each of the four violations—a total award of $10,000.00. (Doc.

No. 22-1, PageID# 145, ¶ 23.) This award of damages on the DMCA claim is reasonable in light of the factors discussed above.

TEC also seeks to recover attorney's fees and costs under 17 U.S.C. §§ 1203(b)(4) and (5), which authorize the recovery of costs by any party and an award of reasonable attorney's fees to the prevailing party in the court's discretion. In determining whether to award such relief, "a court may consider (1) whether a complex or novel issue justified the litigation of the case, (2) whether the defendant made an attempt to avoid the infringement, and (3) whether the infringement was innocent." *Disney Enters. v. Farmer*, 427 F. Supp. 2d 807, 817 (E.D. Tenn. 2006). Here, the litigation was not driven by a complex or novel legal issue. It was necessitated, however, by Oisoon's failure to remove the infringing images from its website after receiving TEC's takedown notice and cease-and-desist letter. The evidence submitted shows that Oisoon made no attempt to avoid infringement, although it did attempt to avoid detection by removing TEC's watermark from the images it appropriated. That conduct provides ample proof that Oisoon's infringement was not innocent or unintentional. The discretionary award of fees and costs is therefore justified in this case.

The Boylan affidavit and attached itemizations (Doc. No. 22-20, PageID# 196–206) establish the nature of the claimed costs and show the expenditure of 19.4 hours of professional time billed at the rate of $225.00 per hour. TEC's total request is $621.90 in costs recoverable under § 1203(b)(4), and $4,342.50 in attorneys' fees recoverable under § 1203(b)(5). The court has reviewed these costs and time records and finds an award of the amount requested to be reasonable and proportionate to this action, particularly in light of Oisoon's willful misconduct and default. *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883 (S.D. Ohio 2007). TEC's request for fees and costs will be granted.

### C. The Lanham Act Claim

Section 43(a) of the Lanham Act provides that:

Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). To establish a claim of false advertising under this provision, a plaintiff must establish five elements: (1) the defendant has made false or misleading statements of fact concerning his own product or another's; (2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the purchasing decisions of a deceived consumer; (4) the advertisements were introduced into interstate commerce; and (5) there is a causal link between the challenged statements and the plaintiff's harm. *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 689 (6th Cir. 2000).

TEC has adequately established each of these requirements in its Verified Complaint (Doc. No. 1, PageID# 7–8, ¶¶ 27–33) and the Switzer affidavit (Doc. No. 22-1, PageID# 144–45, ¶¶ 17–22). Specifically, TEC states that Oisoon used ten of TEC's product photos bearing the watermarked trade name "The Executive Company" to market their own products on their internet website (*see* Doc. Nos. 22-10–22-19, PageID# 186–95). (Doc. No. 1, PageID# 7, ¶ 29; Doc. No. 22-1, PageID# 144, ¶ 17.) This caused actual confusion among TEC's customers, who thought that TEC and Oisoon were affiliated and were selling the same products on different websites at different prices. (Doc. No. 22-1, PageID# 144–45, ¶¶ 19–20.) That confusion caused

TEC's customers to contact Switzer and ask that TEC match Oisoon's lower price or risk losing their business. (Doc. No. 22-1, PageID# 142, 146, ¶¶ 7, 29.) TEC had to lower the price of its products to meet its customers' demands because of Oisoon's use of images associated with and directly attributed to TEC, which "influenced [TEC]'s customer[s'] purchasing decisions." (Doc. No. 22-1, PageID# 144–45, ¶ 20.) Finally, Oisoon's website introduced the images into interstate commerce. (*Id.* at PageID# 145, ¶ 21.) Oisoon is thus liable to TEC under § 43(a) of the Lanham Act, and judgment by default is appropriate.

TEC seeks damages for the Lanham Act violation under 15 U.S.C. § 1117(a), which provides, in pertinent part:

> When . . . a violation under section 1125(a) or (d) of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. . . . In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. . . .

15 U.S.C. § 1117(a). After originally suggesting an equitable award of $10,000.00 for each of the ten violations based on the fact that Oisoon's profits are not ascertainable (Doc. No. 18-1, PageID# 95), TEC now more appropriately requests an award based on its actual damages. (Doc. No. 22-1, PageID# 145, ¶ 24.) It requests $68,838.46, based on calculations from its estimated lost revenue ($858.15) and lost profits ($343.26) due to overall sales decline resulting from Oisoon's conduct; lost profit on one large order after being forced to match Oisoon's lower price ($530.00); hourly wages paid to its officers for time spent analyzing the website sales of both companies to determine the extent of Oisoon's misconduct ($4,954.20); and lost profits from lower volume of sales due to a drop in traffic to its website ($55,011.00).

Based on Switzer's affidavit testimony, the court accepts as damages lost profits in the amount of $530.00 stemming from one large order of "boxing glove squeezie keyrings" that TEC had to fulfill at Oisoon's reduced price in order to keep its customers' business. (*Id.* at ¶ 29.)

The court accepts as damages the payment to TEC's officers for time spent analyzing the website sales of both companies to determine the extent of Oisoon's misconduct. (*Id.* at ¶ 30.) TEC states that the employees "meticulously analyze[d] each of the thousands of products on both websites in order to determine exactly which duplicate images were being used by [Oisoon]." (*Id.*) TEC asks for $4,954.20, calculated as $1,454.20[1] paid to its Chief Information Officer for 55 hours of work at a rate of $26.44/hour and $3,500.00 paid to "other officers" for 70 hours of work at a rate of $50.00/hour. The court finds the requested amount to be reasonable in light of the size of the task that faced TEC in determining what images Oisoon had appropriated for its website.

The court also accepts the proposition that TEC suffered a sales decline and lost revenue and profits due to Oisoon's misconduct. However, on the record before the court, the value of that loss cannot be calculated with enough certainty to justify an award. Switzer's affidavit states that, "[i]n the case of just the 14 images that either had the copyright management information removed or were falsely advertised, TEC estimates that it lost $858.15 in revenue and $343.26 in profits. (See attached Exhibit G)." (Doc. No. 22-1, PageID# 146, ¶ 28.) The cited exhibit does not contain any reference to the revenue and profit loss attributable to the fourteen images, or even the ten that form the basis of this Lanham Act damages calculation. (The four images that

---

[1] It is noted that TEC appears to have mis-keyed its payment to its Chief Information Officer (CIO) when it states it paid him or her $1,254.20, or "$26.44/hr. x 55 hours." In fact, those hours at that hourly rate required payment of $1,454.20. The total request for $4,954.20 based on 125 hours of employee time correctly accounts for the CIO's time.

were reproduced in violation of the DMCA have already been counted in TEC's recovery.) Nor does TEC provide any other insight into how it arrived at these amounts. A plaintiff must prove compensatory damages to a reasonable degree of certainty by a preponderance of the evidence. *See Anderson v. Wade*, 33 F. App'x 750, 756 (6th Cir.2002). TEC has not done that here.

Nor can the court accept TEC's calculation of lost profits from a lower volume of sales due to a drop in its website traffic. TEC justifies its $55,011.00 valuation of this alleged harm as follows:

> Because [Oisoon] placed exact duplicate content on its website, it is believed that TEC received a lower search ranking on Google and suffered a resulting loss in sales. From November 1, 2015 through September 30, 2016, it is estimated that TEC's organic traffic to its website dropped by 7.07% from the previous year. (See attached Exhibit G Google Analytics). Based upon a 7.07% drop in traffic, TEC estimates that it suffered $55,011.00 in lost profit during that period. This is calculated by using $732,082.91 in TEC revenue during this period of time, multiplied by a markup factor of 7.61%.

(*Id.* at PageID# 147, ¶ 31.) This calculation is based on an estimated 7.07% drop in "organic traffic" over the year ending October 31, 2015. But TEC's model does not attempt to account for other possible causes of the drop in website traffic, nor does it account for causes of the drop in its sales other than reduced website traffic. Indeed, TEC concedes that it "do[es] not have the stats for the year prior" and that its estimate of lost profits due to lower sales volume is solely based on "th[e] logic" of applying the 7.07% drop in website traffic to its "organic sales." (Doc. No. 22-23, PageID# 209.) TEC determines its lost profits from those lost sales by multiplying its reduced revenue for the year beginning November 1, 2015 "by a markup factor of 7.61%."[2] TEC's methodology does not prove its damages to a reasonable degree of certainty. *Anderson*, 33 F. App'x at 756.

---

[2] TEC states that "7.61% is the markup factor for a 7.07% decline." (Doc. No. 22-23, PageID# 209.)

However, assuming (as TEC asserts) that TEC's search engine rankings fell because customers found content duplicated on its site and Oisoon's site and went to Oisoon's site instead because of its lower prices, some of TEC's lost profits can be attributed to reduced website traffic. TEC is prohibited, in part, from giving a more detailed calculation of its damages because it cannot obtain relevant information from Oisoon. In these circumstances, the court will exercise its discretion and award three times the $5,484.20 of actual damages proved by TEC,[3] or $16,452.60, on its Lanham Act claim. 15 U.S.C. § 1117(a).

**D.     Injunctive Relief**

TEC also seeks a permanent injunction pursuant to 17 U.S.C. § 1203(b)(1) and 15 U.S.C. § 1116(a). These statutes authorize injunctive relief upon such terms as the court deems reasonable to prevent future copyright violations. TEC seeks an order enjoining Oisoon as follows:

> (1) Restraining them from using the photographs, descriptive terms, source coding or any element thereof or substantially or confusingly similar to the products listed on [TEC's] website in the marketing, promotion, distribution, or sale of any of [Oisoon's] products;
>
> (2) Restraining them from unfairly competing with [TEC], or otherwise injuring [TEC's] business or reputation in any manner; and
>
> (3) Enjoining [Oisoon] from using, and ordered to remove, any uniform resource locator ("URL" or "web-address"), or other online resource that infringes upon Plaintiff's copyright, including www.oisoon.com.

(Doc. No. 1, PageID# 8; *see also* Doc. No. 18-1, PageID# 96 and Doc. No. 22-1, PageID# 148–49.)

Though the issuance of an injunction is discretionary, "courts have traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists."

---

[3]     This figure is the sum of $530.00 in lost profits from the large order of keyrings undersold by Oisoon and the payment of $4,954.20 to TEC's officers discussed above.

*Disney Enters.*, 427 F. Supp. 2d at 819 (quoting *Jobete Music Co., Inc. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d 1077, 1092 (S.D. Ohio 2003)). "Given 'the public interest in upholding copyright protections,' injunctions are regularly issued pursuant to [the Copyright Act] . . . [and] 'as part of default judgments.'" *Id.* (quoting *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003)). Every order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). "These prerequisites are designed to protect those who are enjoined by informing them of what they are called upon to do or refrain from doing in order to comply with the injunction or restraining order." 11A Charles Alan Wright, et al., *Federal Practice & Procedure* § 2955 (2d ed.).

The court finds that injunctive relief is appropriate based on this record, although not to the extent it is requested by TEC. TEC asserts that, as of July 2, 2017, Oisoon was still displaying TEC's proprietary images, text, and data on its website. (Doc. No. 22-1, PageID# 148, ¶ 33; Doc. No. 22-24, PageID# 210.) TEC has established Oisoon's liability, and Oisoon has failed to respond to these proceedings. Oisoon's continued false advertising and violation of TEC's copyrights after TEC asserted its rights, demanded Oisoon cease and desist all such activities, and instituted these proceedings demonstrates the need for injunctive relief.

Accordingly, the court enjoins Oisoon from using TEC's proprietary images, website content, or data in any way. The court will not grant TEC's request to enjoin Oisoon "from unfairly competing with [TEC], or otherwise injuring [TEC]'s business or reputation in any manner." "Requests for injunctions that command parties to obey the law are improper and unnecessary." *In re Krause*, 414 B.R. 243, 266 (Bankr. S.D. Ohio 2009). A proscription against unfairly competing with or otherwise injuring TEC "in any manner" uses "generic language . . .

[that] fails to target any specific conduct or practices," and amounts to an inappropriate "'obey the law' injunction[]." *Id.*

Further, to the extent TEC asks the court to enjoin Oisoon from using the website www.oisoon.com, the court denies its request. The harm TEC has demonstrated is fully addressed by Oisoon's removal of any proprietary material from that website. TEC has not established a basis for the court to enjoin Oisoon from the use of its website domain entirely.

**III. Conclusion**

In sum, the court GRANTS TEC's motion for default judgment (Doc. No. 18) and enters judgment against Oisoon LLC and Xu, jointly and severally, in the amount of $26,452.60 in statutory and actual damages, $4,342.50 in attorneys' fees, and $621.90 in costs. The total award is thus $31,417.00.

A PERMANENT INJUNCTION hereby issues whereby Oisoon LLC and Xu are ORDERED to: (1) cease using TEC's photographs, descriptive terms, source coding or any element thereof, or other such items that are substantially or confusingly similar to the products displayed on TEC's website in the marketing, promotion, distribution, or sale of any of Oisoon's products; and (2) remove from Oisoon's website any content of any kind that has been appropriated from TEC's website.

This Order constitutes the judgment in this case. The Clerk shall close the case.

It is so ORDERED.

Enter this 28th day of September, 2017.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE